2013 OK CR 3

**STATE of Oklahoma, Appellant,**

v.

**Julio Juarez RAMOS**

**and**

**Isidro Juarez Ramos, Appellees.**

No. S–2012–299.

Court of Criminal Appeals of Oklahoma.

March 13, 2013.

Hollis A. Thorp, District Attorney, A.J. Laubhan, Assistant District Attorney, Woodward, OK, counsel for appellant in district court.

Newell E. Wright, Jr., Clinton, OK, counsel for appellee, Julio Juarez Ramos, in district court.

Larry Monard, Oklahoma City, OK, counsel for appellee, Isidro Juarez Ramos, in district court.

Hollis Thorp, District Attorney, Danny G. Lohmann, Assistant District Attorney, Fairview, OK, counsel for appellant on appeal.

S. Gail Gunning, Norman, OK, counsel for appellees, Julio Juarez Ramos and Isidro Juarez Ramos, on appeal.

### OPINION

LUMPKIN, Judge.

¶ 1 Appellees Julio Juarez Ramos and Isidro Juarez Ramos were charged in the District Court of Woodward County with First Degree Murder (21 O.S.2001, § 701.7). Case Nos. CF–2009–158 and CR–2009–159, respectively. Separate preliminary hearings were held for each defendant (November 12, 2009, for Julio Ramos and March 12, 2010, for Isidro Ramos), after which each defendant was bound over for trial. Each defendant was represented by counsel. On March 22, 2012, a hearing was held before the Honorable Ray Dean Linder, District Judge, on the defendants' Motion to Suppress Evidence. The parties stipulated that the defendants were not advised of their rights under Article 36 of the Vienna Convention on Consular Relations, Apr. 24, 1963, [1970] 21 U.S.T. 77, 100–101, T.I.A.S. No. 6820 (hereinafter VCCR) and that if so notified the Guatemalan Consulate would have informed the Ramos brothers to remain silent and await proper legal counsel to advise them further. At the conclusion of the hearing, the trial court suppressed evidence of the Defendants' interviews with police because they had not been advised of their consular rights and the State announced its intent to appeal that decision.

¶ 2 The State now appeals from the District Court's decision pursuant to 22 O.S.Supp.2008, § 1053(5) and raises the following propositions of error:

I. While a treaty may constitute an international commitment, it is not binding domestic law unless Congress has enacted statutes implementing it or the treaty itself conveys an intention that it be self-executing. The Vienna Convention possesses neither of these attributes; therefore, there is no personal right of the defendants that justify suppression of the evidence.

II. Suppression of the evidence is an improper remedy for the failure to inform the defendants of their rights under the Vienna Convention. *Miranda* offers the same or similar protections and the defendants received *Miranda* warnings in Spanish and acknowledged that they understood them.

¶ 3 After thorough consideration of these propositions of error and the entire record before us on appeal including the original record, transcripts, and briefs of the parties, we find the ruling of the District Court granting the motion to suppress should be reversed and the case remanded to the District Court for further proceedings consistent with this opinion.

¶ 4 The Ramos brothers are Guatemalan nationals charged with the first degree murder of Antonio Lopez Velasquez. Shortly after their arrest, the defendants were given the *Miranda* warning in Spanish. In separate interviews with police, both men confessed to killing the decedent and disposing of his body at a nearby oil well site. After they were bound over for trial, the defen-

dants filed a Motion to Suppress the confessions based on the fact they were not notified they could inform the Guatemalan Consulate of their detention as required by Article 36 of the VCCR. The defense argued that under *Torres v. State*, 2005 OK CR 17, 120 P.3d 1184, the remedy for this violation is suppression of the evidence. The State argued, as it does now on appeal, that *Torres* is not applicable as it does not address the remedy for a VCCR violation and the more recent case of *Sanchez–Llamas v. Oregon*, 548 U.S. 331, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006), specifically finding suppression of the evidence is not a remedy, is controlling law. The trial court agreed with defense counsel and granted the motion to suppress.

¶ 5 Article 36 of the Vienna Convention on Consular Relations "concerns consular officers' access to their nationals detained by authorities in a foreign country." *Sanchez–Llamas*, 548 U.S. at 338, 126 S.Ct. at 2675. Subsection 1(b) of Article 36 states "if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner." *Id.* "In other words, when a national of one country is detained by authorities in another, the authorities must notify the consular officers of the detainee's home country if the detainee so requests." *Id.*, at 339, 126 S.Ct. at 2675. "Article 36(1)(b) further states that '[t]he said authorities shall inform the person concerned [*i.e.*, the detainee] without delay of his rights under this subparagraph.'" *Id.*

¶ 6 The parties in this case stipulated that the Guatemalan Consulate had not been contacted regarding the brothers' detention and if the Consulate had been contacted, they would have informed the Ramos brothers to remain silent and await proper legal counsel to advise them further. Therefore, in Proposition I we presume there has been an Article 36 violation and determine whether suppression of the evidence is an available remedy. In *Sanchez–Llamas*, the United States Supreme Court answered that question in the negative.

¶ 7 The Supreme Court listed several reasons supporting its conclusion that suppression of the evidence is not a remedy for an Article 36 violation. First, the Court found the VCCR itself did not provide for suppression of evidence. The Court noted that "[t]he exclusionary rule as we know it is an entirely American legal creation" and that "[m]ore than 40 years after the drafting of the Convention, the automatic exclusionary rule applied in our courts is still 'universally rejected' by other countries." *Id.*, at 343–344, 126 S.Ct. at 2678.

¶ 8 The Supreme Court further found suppression was not a remedy under United States law. In rejecting Sanchez–Llamas' argument that a violation required suppression as a matter of the Court's "authority to develop remedies for the enforcement of federal law in state-court criminal proceedings," the Supreme Court recognized it did not have supervisory power over the state courts. The Supreme Court said its only authority "to create a judicial remedy applicable in state court must lie, if anywhere, in the treaty itself." *Id.*, at 345–346, 126 S.Ct. at 2679. Reiterating its earlier conclusion that the VCCR itself did not provide a judicial remedy for a violation, the Court said even if it did so imply, the VCCR also stated that Article 36 rights "shall be exercised in conformity with the laws and regulations of the receiving State." *Id.*, at 347, 126 S.Ct. at 2680. The Supreme Court further stated, "[u]nder our domestic law, the exclusionary rule is not a remedy we apply lightly" and "[b]ecause the rule's social costs are considerable, suppression is warranted only where the rule's 'remedial objectives are thought most efficaciously served.'" *Id.*, at 347–348, 126 S.Ct. at 2680.

¶ 9 Contrasting the exclusionary rule with the right to consular notification the Court explained:

> We have applied the exclusionary rule primarily to deter constitutional violations. In particular, we have ruled that the Constitution requires the exclusion of evidence obtained by certain violations of the Fourth Amendment . . .
>
> . . .
>
> The violation of the right to consular notification, in contrast, is at best remotely connected to the gathering of evidence. Article

36 has nothing whatsoever to do with searches or interrogations. Indeed, Article 36 does not guarantee defendants *any* assistance at all. The provision secures only a right of foreign nationals to have their consulate *informed* of their arrest or detention—not to have their consulate intervene, or to have law enforcement authorities cease their investigation pending any such notice or intervention. In most circumstances, there is likely to be little connection between an Article 36 violation and evidence or statements obtained by police.

Moreover, the reasons we often require suppression for Fourth and Fifth Amendment violations are entirely absent from the consular notification context. We require exclusion of coerced confessions both because we disapprove of such coercion and because such confessions tend to be unreliable. We exclude the fruits of unreasonable searches on the theory that without a strong deterrent, the constraints of the Fourth Amendment might be too easily disregarded by law enforcement. The situation here is quite different. The failure to inform a defendant of his Article 36 rights is unlikely, with any frequency, to produce unreliable confessions. And unlike the search-and-seizure context—where the need to obtain valuable evidence may tempt authorities to transgress Fourth Amendment limitations—police win little, if any, practical advantage from violating Article 36. Suppression would be a vastly disproportionate remedy for an Article 36 violation.

*Id.,* at 348–349, 126 S.Ct. at 2680–2681 (internal citations omitted).

¶ 10 The Supreme Court further found that other constitutional and statutory requirements effectively protect the interests served by Article 36. *Id.,* at 350, 126 S.Ct. at 2681.

A foreign national detained on suspicion of crime, like anyone else in our country, enjoys under our system the protections of the Due Process Clause. Among other things, he is entitled to an attorney, and is protected against compelled self-incrimination. Article 36 adds little to these "legal options," and we think it unnecessary to apply the exclusionary rule where other constitutional and statutory protections—many of them already enforced by the exclusionary rule—safeguard the same interests Sanchez–Llamas claims are advanced by Article 36.

*Id.,* at 350, 126 S.Ct. at 2681–82 (internal citations omitted).

¶ 11 Finally, the Supreme Court found that suppression of evidence is not the only means of vindicating a VCCR violation. The Court stated that "[a] defendant can raise an Article 36 claim as part of a broader challenge to the voluntariness of his statements to police. If he raises an Article 36 violation at trial, a court can make appropriate accommodations to ensure that the defendant secures, to the extent possible, the benefits of consular assistance." *Id.,* at 350, 126 S.Ct. at 2682.

¶ 12 Decided a year before *Sanchez–Llamas, Torres* is a capital post-conviction appeal. 2005 OK CR 17, ¶ 1, 120 P.3d at 1185. While addressing the VCCR, the suppression of evidence as a remedy for a violation of the VCCR was not an issue in the case. Further, *Torres* was decided under federal law which has since been supplanted by *Sanchez–Llamas.*

¶ 13 Based upon the foregoing, we find *Sanchez–Llamas* is the controlling law in this case and suppression of the evidence is not a remedy for an Article 36 violation. However, under *Sanchez–Llamas* an Article 36 violation can be raised as part of a broader challenge to the voluntariness of any statement made to the police and addressed in a *Jackson v. Denno* hearing.[1]

¶ 14 In appeals brought to this Court pursuant to § 1053, this Court reviews the trial court's decision to determine if the trial court abused its discretion. *State v. Hooley,* 2012 OK CR 3, ¶ 4, 269 P.3d 949, 950. An abuse of discretion has been defined as a conclusion or judgment that is clearly against the logic and effect of the facts presented. *Id.* We find the trial court abused its discretion in granting the motion to suppress by failing to follow applicable law. The ruling of the District Court granting the motion to suppress is reversed and the case remand-

1. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

ed for further proceedings consistent with this opinion. This resolution makes it unnecessary to address Proposition II.

## DECISION

¶ 15 The ruling of the District Court granting the motion to suppress is **REVERSED** and the case is **REMANDED** to the District Court for further proceedings consistent with this opinion. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of* *Criminal Appeals,* Title 22, Ch.18, App. (2013), the MANDATE is ORDERED issued upon delivery and filing of this decision.

LEWIS, P.J. and SMITH, V.P.J. and A. JOHNSON, J.: concur.

C. JOHNSON, J., concur in result.